IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**PATRIECE D. MINNER,**

            **Plaintiff,**

v.                                                                          Case 2:17-cv-02714-JPM-cgc

**SHELBY COUNTY GOVERNMENT,**

            **Defendant.**

---

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Shelby County Government's ("Shelby County") Motion for Summary Judgment. (Docket Entry ("D.E.") #91). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion be GRANTED.

**I.  Introduction**

On September 27, 2017, Plaintiff Patriece Minner filed a *pro se* Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") (D.E. #1), which she later amended on December 14, 2017 (D.E. #9) and on February 7, 2018 (D.E. #18). Plaintiff's Second Amended Complaint, which is the operative pleading in this matter, alleges ongoing discrimination and retaliation on the basis of race in violation of Title VII.[1] Plaintiff's Second Amended Complaint does not contain any factual allegations with the

---

[1] Plaintiff's Second Amended Complaint further alleges violations of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141. Upon consideration of Plaintiff's Motion

1

exception of those provided in the four attached Charges of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), the allegations of which are incorporated by reference herein.

On August 21, 2019, Defendant filed its Motion for Summary Judgment. Therein, Defendant asserts that Plaintiff fails to state a claim for discrimination or retaliation under Title VII. On October 25, 2019, Plaintiff filed her Response to Defendant's Motion for Summary Judgment. Plaintiff asserts that the Motion is premature and that she should be granted additional time to conduct discovery. Plaintiff also argues that, even on the existing record, there are "numerous general issues of material fact"; however Plaintiff does not specify the substance of these disputes of fact. Plaintiff did not include either a response to Defendant's Statement of Undisputed Material Fact, a Statement of Additional Disputed Facts, or any evidence in support of her Response.

On October 28, 2019, Defendant filed its Reply. Defendant argues that its Statement of Material Fact should be deemed undisputed pursuant to Local Rule 56.1(b). Defendant further asserts that Plaintiff's request for additional discovery in advance of the resolution of the instant Motion are without merit as her opportunity to do so has passed under the Court's Scheduling Order, as she took no depositions during the discovery period, and as she never requested that any discovery deadlines be extended.

---

for Leave to Amend (D.E. #34), which was filed subsequent to the Second Amended Complaint, the District Court determined that this claim would not be permitted because it was futile. (*See* D.E. #42). Additionally, although the Second Amended Complaint raised Title VII claims against individual defendants, these claims were dismissed by joint stipulation of the parties. (*See* D.E. #50, #52).

2

## II.      Proposed Findings of Fact

Here, Plaintiff did not file any response to Defendant's Statement of Undisputed Material Fact. Local Rule 56.1(b) requires such a response, and Local Rule 56.1(d) provides that failure to do so "within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." Accordingly, it is RECOMMENDED that Defendant's Statement of Undisputed Material Fact be deemed as undisputed for purposes of summary judgment. The undisputed findings of fact are set forth below:

The Juvenile Court of Shelby County, Tennessee ("Juvenile Court") is part of Shelby County Government. Plaintiff, an African-American female, was hired as a Probation Counselor A for Juvenile Court's Children's Bureau Services on or about March 3, 2008. On or about July 1, 2014, the title of Probation Counselor A was changed to Juvenile Services Counselor II. Despite the job title change, Plaintiff's job responsibilities remained essentially the same as when the job title was Probation Counselor A. As of the filing of the Motion for Summary Judgment, Plaintiff was still employed as a Juvenile Services Counselor II for Juvenile Court.

From February 2, 2015 through June 30, 2015, Nelson Peatross ("Peatross"), a Juvenile Counselor II, served as Site Administrator for Juvenile Court's Youth Assessment Screening Instrument ("YASI"), a computer process. Peatross received a total of $720.50 in out-of-class pay for performing these additional functions, of which he was already familiar. Plaintiff did not know how to use YASI and did not have the skills to run the program. Plaintiff also did not apply to perform the extra YASI duties that Peatross performed.

In February 2015, there were forty-three employees with Juvenile Court employed in the position of Juvenile Services Counselor II in the Court Services Division. Of those, twenty-four

are African-American females, nine are African-American males, five are White females, and five are White males. As of July 2019, there were thirty-eight employees with Juvenile Court employed in the position of Juvenile Services Counselor II in the Court Services Division. Of those, twenty-three are African-American females, nine are African-American males, one is White female, and five are White males. No Juvenile Services Counselor II other than Peatross has been paid out-of-class pay between February 2, 2015 and present.

Plaintiff received three Employment Performance Evaluations from her supervisor, Jacqueline Parson ("Parson"), an African-American female—in June 2013, in August 2014, and in July 2015. She received overall scores of 3.81, 3.13, and 3.0 on these evaluations, respectively, all of which placed her in the "Meets Expectations" category.

In or around March 2016, Plaintiff was a witness in an investigation of Parsons related to an allegedly inappropriate relationship. Plaintiff was not the complainant who initiated the initial investigation and was only a participant because someone named her as a potential witness. In July 2016, Plaintiff received an Employee Performance Evaluation from Parsons. She received an overall score of 3.25, which placed her in the "Meets Expectations" category. During Plaintiff's entire career with Shelby County, she has never received an Employee Performance Evaluation in which her overall performance was ranked as anything other than "Meets Expectations."

On April 5, 2016, Parsons issued Plaintiff a 60 Day Correction Plan due to performance issues she was having with her job. Plaintiff successfully completed the Plan and, as a result, was not disciplined in any way. Parsons did not single out Plaintiff to criticize her work. Parsons did not follow Plaintiff to Court but would check on all Counselors in courts as

part of her job. At no time did Parsons issue any discipline against Plaintiff that directly led Plaintiff to lose any pay or benefits.

On or about July 1, 2016, Plaintiff was transferred to another supervisor as part of a regular rotation. During the time Parsons supervised Plaintiff, up to and including July 1, 2016, Parson did not know that Plaintiff had participated in any investigation related to her. Parson did not take any action against Plaintiff due to her race or in retaliation against Plaintiff for involvement in any investigation or activity protected by law.

On or around March 24, 2016, Plaintiff interviewed for a Manager A position. Plaintiff was one of sixteen individuals interviewed for the position. Felecia Banks ("Banks"), an African-American female, received the Manager A position. Banks received the position because she was the most qualified candidate based on her knowledge, skills, and abilities for the position.

Plaintiff received a written reprimand on or about August 29, 2017 for failing to file a petition despite her supervisor's instructions to do so and for making related, improper comments in court. Plaintiff did not suffer any loss of pay or benefits as a result of this reprimand. Since July 1, 2013, Plaintiff has not been given any discipline that led her to losing any pay or benefits.

## III. Analysis

### A. *Plaintiff's Request for Additional Discovery*

As a threshold matter, Plaintiff argues that she should be permitted additional discovery before the Court rules upon the instant motion. Rule 56(d) of the Federal Rules of Civil Procedure provides as follows:

**(d) When Facts are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Plaintiff has not provided either an affidavit or declaration, any specified reason, or an explanation of how she cannot provide essential facts necessary to resolve this summary judgment motion.[2] Instead, Plaintiff states that she "has had no opportunity for real discovery." On the contrary, Plaintiff was afforded precisely this opportunity under the Court's Scheduling Order, which set a deadline for completing all discovery on July 26, 2019. Plaintiff elected not to avail herself of it. Further, under Rule 6 of the Federal Rules of Civil Procedure, Plaintiff must show that she failed to request additional discovery before the expiration of the deadline because of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Plaintiff has in no way attempted to make such a showing. Accordingly, it is RECOMMENDED that Plaintiff's request for additional discovery be DENIED.

### B. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[2] Plaintiff's only specific mention of what she seeks is that she believes she should be "permitted more time to conduct investigation and research in light of former Administrator Bridgett Bowman's resignation," which she opines was a "surprise," and which she states "will lead to genuine issues of material fact . . . ."; however, other than this general statement, Plaintiff provides no further information as to how discovery regarding another individual's resignation is essential to the resolution of this motion.

6

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid

7

summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### C. Title VII Discrimination

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond*

*Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Plaintiff's central claim for racial discrimination appears to be that Peatross received out-of-class pay that she did not receive. The record does contain any direct evidence that Peatross

9

received out-of-class pay based upon his race; instead, the undisputed evidence reflects that Peatross received this additional pay because he served as the YASI Site Administrator, a position to which Plaintiff did not apply and for which she was not qualified.

Similarly, Plaintiff cannot establish a *prima facie* case of discrimination based upon circumstantial evidence because she was not qualified to perform the YASI Site Administrator position. Even if Plaintiff were able to establish a *prima facie* case, Defendant has provided a legitimate, non-discriminatory reason as to why Peatross was selected for the Site Administrative Position—namely, that he had knowledge of the system, that Plaintiff did not, and that Plaintiff did not apply for this position. Accordingly, it is RECOMMENDED that Plaintiff's claim for Title VII discrimination on the basis of race fails as a matter of law and that Defendant's Motion for Summary Judgment should be GRANTED on this claim.

### *D. Title VII Retaliation*

Next, Plaintiff alleges that she suffered retaliation as a result of filing her June 11, 2015 EEOC Charge of Discrimination and as a result of participating in an internal investigation of a sexual harassment complaint against her supervisor. Title VII also prohibits discrimination against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). As with a Title VII discrimination claim, a Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support such an inference. Here, there is no direct evidence that Plaintiff suffered retaliation for her protected activity. Thus, Plaintiff's claim must be addressed under the *McDonnell Douglas* framework set forth above.

Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that she demonstrate as follows: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted).  If Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. *Id*. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*. (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Here, the undisputed facts as to Parson's actions are as follows.  Parsons issued all of Plaintiff's Employment Performance Evaluations and placed her on a corrective action plan due to performance issues she was having with her job.  During the time Parsons supervised Plaintiff, up to and including July 1, 2016, Parsons did not know that Plaintiff had participated in any investigation related to her.  Parson did not take any action against Plaintiff in retaliation against Plaintiff for involvement in any investigation or activity protected by law.  At no time did Parsons issue any discipline against Plaintiff that directly led Plaintiff to lose any pay or benefits.  Thus, Plaintiff cannot establish that Parsons took any materially adverse actions against her.  *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2009) ("In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary") (citations and

internal quotation marks omitted); *Agnew v. BASF Corp*, 286 F.3d 307 (6t Cir. 2002) (holding that a performance improvement plan does not constitute an adverse employment action); *Miceli v. U.S. Dept. of Transp.*, 83 Fed. Appx. 697, 700 (6th Cir. 2003) (holding that a performance improvement plan did not constitute an adverse employment action because it "did not materially change the terms" of employment). Further, Plaintiff cannot satisfy the second prong that Parsons knew of her protected activity when she evaluated her or placed her on the corrective action plan.

As to the promotion Plaintiff sought for the Manager A position, the evidence in the record is undisputed that Plaintiff was one of sixteen candidates, that Plaintiff was interviewed, and that the candidate who received the position was selected because she was the most qualified candidate based on her knowledge, skills, and abilities for the position. Thus, Plaintiff cannot establish either that the denial of this promotion was causally connected to her any protected activity or that Defendant's proffered reason for the employment decision was pretextual.

Finally, with respect to Plaintiff's August 29, 2017 written reprimand, it is undisputed that this was issued for failing to file a petition despite her supervisor's instructions to do so and for making related, improper comments in court. It is also undisputed that Plaintiff did not suffer any loss of pay or benefits as a result of this reprimand. Thus, Plaintiff did not suffer a materially adverse employment action because of the reprimand. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (citing *Cregett v. Jefferson Cty. Bd. Of Educ.*, 491 Fed. Appx. 561, 566, No. 11-6375, 2012 WL 3104508, at *3 (6th Cir. Aug. 1, 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.")). Further, based upon

the undisputed evidence, Plaintiff cannot establish either that the written reprimand was causally connected to her any protected activity or that Defendant's proffered reason for the employment decision was pretextual. Accordingly, it is RECOMMENDED that Plaintiff's Title VII retaliation claim fails as a matter of law and that Defendant's Motion for Summary Judgment should be GRANTED on this claim.

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

**DATED** this 15th day of November, 2019.

<u>s/ Charmiane G. Claxton</u>
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**